James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway, Fourth Floor
Long Beach, CA 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Robert S. Green (State Bar No. 136183)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

*Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY CARSON, and all similarly situated individuals,<br><br>                    Plaintiffs,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>                    Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:**<br><br>*1.* **VIOLATIONS OF FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, *ET SEQ.;***<br><br>*2.* **VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT. ORC 1345.01, *et seq.;***<br><br>*3.* **EQUITABLE RELIEF UNDER OHIO LAW**<br><br>**JURY TRIAL DEMANDED** |

## **JURISDICTION AND VENUE**

1.     This Court has federal question jurisdiction because this case arises out of violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").   28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.     This Court has supplemental jurisdiction to hear all state law claims under Ohio state law pursuant to 28 U.S.C. § 1367.

3.     This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members, and at least some members of the proposed Class have different citizenship than Alteryx.

4.     Venue is proper in the United States District Court for the Central District for the State of California pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(3) as Defendant's principal place of business is in this District and also because the Defendant's conduct giving rise to this action occurred in this District.

## **PARTIES**

5.     Plaintiff Terry Carson ("Plaintiff") is a natural person residing in the County of Cuyahoga, State of Ohio.

6.     Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).  Additionally, Plaintiff and all members of the Ohio Subclass are "consumers" or "persons" as those terms are defined in ORC 1345.01, *et seq.*

7.     Defendant Experian Information Systems, Inc. is a Delaware corporation with its principal place of business in Costa Mesa, CA.  Experian does business in the State of California and Ohio, as it derives information from Ohio and California consumers which it uses to create its data analytics products.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

8.      Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties in the form of data analytics products, and uses interstate commerce to prepare and/or furnish the reports.  Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).  Additionally, Experian is a "supplier" as that term is defined by ORC § 1345.01, *et seq.*

9.      Unless otherwise indicated, the use of Experian's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

## FACTUAL ALLEGATIONS

### *Disclosure of Third Party Inquiries*

10.     The Fair Credit Reporting Act ("FCRA")[1] was borne from controversy.  Specifically, in the late 1960s it was disclosed that reporting agency Equifax (then known as "Retail Credit") was collecting data on "virtually every phase of a person's life; his marital troubles, jobs, school history, childhood, sex life, and political activities."[2]

11.     In 1970, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  Consumer reporting agencies ("CRAs") have assumed a vital role in assembling and evaluating consumer credit; and the FCRA seeks to ensure that CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.  15 U.S.C. § 1681.

---

[1]     15 U.S.C. § 1681 *et seq.*

[2]     Wired Staff, *Separating Equifax from Fiction*, Wired, Sept. 1, 1995, *available at* https://www.wired.com/1995/09/equifax/ (last visited Dec. 6, 2017).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

12.     A central duty the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.  The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1).  "File," is explicitly defined in the FCRA when applied to consumers, and means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g).

13.     The information disclosed under Section 1681g must include an identification of each person who "procured" a consumer report for employment or another purpose.  15 U.S.C. § 1681g(a)(3).  The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d).

14.     Finally, a CRA's Section 1681g disclosure must also include "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer."  15 U.S.C. § 1681g(a)(5).

15.     Without disclosure of the names, contact information, and permissible purposes for which third parties accessed a consumer's credit, especially for third parties who obtained the information without the express consent of a consumer or in connection with an action the consumer took, that

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

consumer is divested of any notification that these third parties have accessed Plaintiff's private credit information at all.

16.     Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen, or whether the sheer number of inquiries from a particular third party warrants further investigation.

17.     Experian has routinely testified that the information in a consumer's "file" includes information regarding inquiries,[3] and has affirmed that it has an obligation to disclose that information pursuant to 15 U.S.C. § 1681g.[4]

18.     However, Experian actively chooses not to share with consumers all of the soft credit inquiries which have been made on a consumer's file.  Without disclosure of these inquiries, Experian prevents consumers from appreciating the full scope of potential inquiries from a third party, as well as whether each inquiry was made for a permissible purpose.   This makes it functionally impossible for consumers to take advantage of the self-policing remedies provided to them under the FCRA, and violates both the consumer's statutory right to privacy, as well as the plain language of 15 U.S.C. § 1681g.

19.     Exacerbating this failure, Experian is obligated to obtain a certification from each third party indicating the purpose for which a consumer's credit can be used pursuant to 15 U.S.C. § 1681e(a), and, on information and

---

[3]

*See, e.g.*, Apr. 28, 2014 Declaration of Kimberly Hughes in Support of Experian's Response to Motion to Compel, *Dixon v. Experian Information Solutions, Inc.*, No. 13-cv-227, ECF Dkt. 42-4 (N.D. Ind.), at ¶ 8, ("Experian can perform an inquiry into File One to generate . . . historical information in an Administrative Report ('Admin Report')."); *id.* at ¶ 13 ("File One stores consumer trade line, inquiry and public record information in separate tables.").

[4]

*See* Experian's Motion for Summary Judgment, *Pappas v. U.S. Bank Home Mortgage, N.A.*, No. 15-cv-8115, ECF Dkt. 102, at 9-10 (N.D. Ill. Oct. 3, 2016) ("Experian Pappas MSJ") (noting that information not commonly sent to creditors is included on Experian's disclosures "because the FCRA requires Experian to provide consumers 'all information in the consumer's file . . . .) (citing 15 U.S.C. § 1681g(a)).  *See also Pappas*, Sept. 30, 2016 Affidavit of Mary Methvin in Support of Experian's Motion for Summary Judgment, ECF Dkt. 103-1, at ¶ 38 (N.D. Ill. Oct. 3, 2016) ("Experian Pappas Decl.") (noting that for certain "account review" information is never sent to third parties in the same form as it appears on a consumer disclosure, "Experian includes [the account review] information on consumer disclosures . . . to comply with its obligations under the Fair Credit Reporting Act.").

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

belief, maintains a record of such certifications.  Thus, Experian has a record of such inquiries which it could disclose to consumers, and fails to do so.  Experian's failure to follow reasonable procedures has led to Experian's production of inadequate disclosures under 15 U.S.C. § 1681g.

20.    Experian's failure to adequately specify the nature and number of the Soft Credit Pulls in its Section 1681g disclosures also violates a consumer's statutory right to privacy because the consumer is deprived of the opportunity to independently investigate the information in their file for completeness, accuracy, and potential fraud – in short, to ensure that the consumer has "meaningfully authorized" the disclosures which have been made to third parties.[5]

21.    By depriving Plaintiff and Class members of information about the precise number of Soft Credit Pulls that have been made, or the permissible purpose for which each Soft Credit Pull was made, Experian subjects each consumer to a concrete informational injury by making it impossible for the consumer to verify that the disclosure was made for a permissible purpose or not.

22.    Because Experian has the information at its disposal and could provide it to the consumers if it wished, its failure to do so was willful and subjects Experian to statutory penalties under the FCRA.  15 U.S.C. 1681o

### Disclosure of Behavioral Data

23.    On information and belief, Experian amasses and maintains an enormous amount of "behavioral" data on consumers, such as household income, purchase history, and even whether an individual is a "dog" or "cat" person.  In particular, Experian has created a credit product known as "OmniView," which it represents is capable of localizing that data at the individual level, as well as "ConsumerView," a marketing database.

---

[5]

    *See, e.g.*, *Syed v. M-I, Inc.*, 853 F.3d 492, 499-500 (9th Cir. 2017) (citations omitted), *cert denied*, --- S.Ct. ----, 2017 WL 2671483 (Mem) (U.S. Nov. 13, 2017); *In re Ocwen Loan Servicing LLC Litig.*, 240 F. Supp. 3d 1070, 1076 (D. Nev. 2016) (interpreting *Syed*).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

24.     Experian has provided "behavioral" data to third parties, particularly Alteryx, Inc. ("Alteryx"), a publicly traded company which describes itself as "The Leader in Self-Service Data Analytics."[6]  Part of Alteryx's business includes maintaining a software platform, which "enables organizations to dramatically improve business outcomes and the productivity of their business analysts."[7]  One of Alteryx's business partners is Experian Marketing Services ("Experian Marketing").  Experian claims that it assists Experian to "improve the quality and value of its commercial services," which include to "drive down costs and raise the efficiency of our data delivery infrastructure."[8]

25.     Consequently, Experian is a "consumer reporting agency" ("CRA") within the cognizance of 15 U.S.C. § 1681a(f) because it acquires and assembles a consumer's personally identifiable information ("PII") in commercial transactions, i.e., for use in its data analytics products, after Experian first acquires the consumer PII data from Experian.

26.     On information and belief, Experian obtains or obtained from Experian at least some of the data used to perform and provide its data analytics services, particularly information contained in Experian's "ConsumerView" marketing database.  Experian describes ConsumerView as "the world's largest consumer database," which contains "thousands of attributes on more than 300 million consumers and 126 million households."[9]  The data available through ConsumerView includes, but is not limited to, consumer (1) age, (2) gender, (3)

---

[6]        Alteryx, About us, available at https://www.alteryx.com/about-us (last visited Dec. 19, 2017).

[7]        Alteryx, Inc. Feb. 24, 2017 Form S-1 Registration Statement, at 2, United States Securities and Exchange Comm'n, available at https://www.sec.gov/Archives/edgar/data/1689923/000119312517056475/d282071ds1.htm (last visited Dec. 19, 2017).

[8]        Alteryx, Experian Helps *Experian Marketing Services Reduce Delivery Time for Client-Ready Output by 70 Percent*, available at: https://www.alteryx.com/sites/default/files/resources/files/case-study-experian.pdf (last visited Dec. 19, 2017).

[9]        *See* Experian, ConsumerView, available at https://www.experian.com/assets/dataselect/brochures/consumerview.pdf (last visited Dec. 19, 2017).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

marital status, (4) presence of children, (5) family status and position, (6) location, (7) homeowner status, (8) education, and (9) occupation.[10]   This information constituted PII.

27.    Experian actively markets and sells data analytics products to third parties which use the Experian PII.   Specifically, Experian claims that by "combining the data blending and advanced analytics of Experian with the demographic and behavioral data from Experian, you can append unprecedented insight about your customers and prospects, as well as monitor the changing dynamics of households over time."[11]   In particular, Experian markets the "Experian ConsumerView household file," which contains "consumer demographics, life event, direct response, property, and mortgage information for more than 235 million consumers and 113 million households."[12]   According to Alteryx, this data can be analyzed at the individual level, permitting consumers to "analyze potential consumers based on marital status, gender, education, and occupation group."[13]   Experian promises that, "Armed with current and five-year projections on lifestyle, attitude, brand preference, media use, and more, you can accurately predict customer demand today, tomorrow, and in the long term."[14]

28.    Based on Alteryx's promotional materials, it appears that this entity accesses the information contained in ConsumerView on at least a periodic basis.

29.    The "behavioral" data collected by Experian, transmitted to third parties, and sold to third parties as part of, *inter alia*, Alteryx's data analytics products is the same type of data Equifax collected in the 1960s which led to the

---

[10]   *See id.*

[11]   Alteryx, *Experian Marketing Services*, available at: https://www.alteryx.com/partners/experian-marketing-services (last visited Dec. 19, 2017).

[12]   *Id.*

[13]   *Id.*

[14]   *Id.*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

enactment of the FCRA.  However, this data does not appear on the consumer disclosures Experian makes pursuant to 15 U.S.C. § 1681g.

30.     Experian's failure to disclose this behavioral data to consumers in its Section 1681g disclosures rendered these disclosures fundamentally incomplete, misleading, and confusing, and violated the right to privacy.

### Experian Data Breach

31.     On October 6, 2017, an employee of UpGuard, a cyber-security firm, discovered an Amazon Web Services S3cloud storage bucket located in the subdomain "alteryxdownload" whose permission settings allowed for over a million specified users to access the contents of the bucket.  On information and belief, the information found in this storage bucket had been placed there by Alteryx.

32.     Among    the    files    in    the    bucket    was    one    entitled, "ConsumerView_10_2013.yxdb." On information and belief, this was an Experian ConsumerView product from October of 2013, and the file extension was an Experian database file format used for large data set analytics.  The file contained 123 million rows, each signifying a different American household.[15]  In each row, 248 columns cross-indexed contained highly detailed information regarding the household addresses, phone numbers, number of adults and children living in the dwelling unit, length of residence, along with highly granulated consumer-purchasing data – in sum, sufficient PII for an identity thief to recreate not only a person's identity, but also their lifestyle.[16]  This information, which was comprised of "the essential details of a core of American households," could be cross-referenced with a voter registration database, for example, to procure

---

[15]

    *Id.*

[16]

    *Id.*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

essential details about individual consumers.[17]

33.  On December 19, 2017, UpGuard published its findings regarding investigation of the publicly available data in the storage bucket, which were quickly reported by news organizations later that day.[18]

34.  For the Plaintiff, as with all potential Class members, these news stories were the first time that they had been informed that Experian had procured their consumer reports from Experian at any time, or that Experian was collecting, storing, and selling this "behavioral" data on them.

**Harms Suffered by Plaintiff and Class Members as a Result of the Data Breach**

35.  Experian's decision not to disclose the fact of the inquiries, the identity of the person making the inquiries, or the purpose of the inquiries, each and collectively constitute violations Plaintiffs and the putative Class members' right to the information about activity in their file they were entitled to receive under 15 U.S.C. § 1681g.  As such, these consumers have lost a benefit conferred on them by Congress, which cannot be replaced.

36.  Experian's failure to disclose to Plaintiffs or the putative class members any "behavioral data" it collected and maintained in their files also violate FCRA's protections of a  consumer's right to independently investigate and/or dispute the information in their file for completeness and accuracy.

37.  Experian's decision not to disclose the fact of the inquiries, the identity of the person making the inquiries, or the purpose of the inquiries, each and collectively constitute violations Plaintiffs and the putative Class members' right to privacy because while their PII was made readily available to those willing and able

---

[17]

Thomas Fox-Brewster, *120 Million American Households Exposed in "Massive ConsumerView Database Leak*, Forbes, available at: https://www.forbes.com/sites/thomasbrewster/2017/12/19/120m-american-households-exposed-in-massive-consumerview-database-leak/#384c64f17961 (last visited Dec. 19, 2017).

[18]

*See id.*; *see also* Ryan Grenoble, Experian Data *Breach Exposes Information On 123 Million American Households*, Huffington Post, Dec. 19, 2017, available at https://www.huffingtonpost.com/entry/alteryx-data-breach-123-million-households_us_5a39316ae4b0860bf4ab4e24 (last visited Dec. 19, 2017).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

to pay for it, Plaintiffs had no knowledge of or even opportunity to disagree with the provision of their PII to third parties.

38.     Experian's failures subjected each consumer to a concrete informational injury and deprivation of their right to privacy; these consumers were deprived of their opportunity to meaningfully consider and address the widespread dissemination of their PII regarding virtually every aspect of their private lives, as well as meaningfully authorize disclosure to the entities who procured and used that data.  Experian's failure to disclose this information resulted in a total deprivation of each consumer's right to privacy and notification that they would need to access the self-help remedies available under the FCRA.

39.     Experian continues to collect and disseminate consumers' private information in secret.  Thus, Experian is continuing to subject Plaintiff and Class members to ongoing harm each time it makes a Section 1681g disclosure.

40.     For example, Plaintiff acquired a Section 1681g disclosure in early November 2017 which contained neither the "behavioral" information, or any inquiries from Alteryx.

### Experian's Liability and Culpability for Its Statutory Failures

41.     Experian's decision to conceal the inquiries made by third parties like Experian from consumers like Plaintiff requested their disclosures under 15 U.S.C. § 1681g was at least negligent, and also reckless, as Experian was obligated to ensure that disclosures of credit information were made for a permissible purpose under 15 U.S.C. § 1681e(a).  Thus, Experian would have a record of both the number of times its "behavioral" data was accessed and sent to third parties, and could reflect the same on the disclosures it sent to consumers. Its failure to disclose these inquiries violated 15 U.S.C. § 1681g.

42.     Moreover, Experian's decision to conceal the "behavioral" data it collected, stored, and transmitted to third parties violated 15 U.S.C. § 1681g.

-10-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

43.     Since Experian had direct knowledge of the "behavioral" data it collected and stored on consumers, as well as when it transmitted that "behavioral" data to third parties, its failure to include that information on its Section 1681g disclosures was willful.  Plaintiff and Class members are thus entitled to statutory damages.  15 U.S.C. § 1681n.

44.     Additionally, Experian's Section 1681g failures were at least negligent, and Plaintiff and Class members are thus entitled to actual damages.  15 U.S.C. § 1681o.

### *Experian's Conduct Also Violates the Ohio Consumer Sales Practices Act*

45.     Defendant's violations of 15 U.S.C. § 1681e(a), as outlined above, also "relat[ed] to the sale . . . of goods or services," i.e., the data-driven transactions Experian entered into with third parties which included Plaintiff and Class members' PII implicate the Plaintiff in the data breach.

46.     Experian has a duty to protect the Plaintiff and Class members' PII

47.     Experian's conduct violates ORC §   1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

## <u>CLASS ALLEGATIONS</u>

### *Class 1 – Failure to Disclosure All Soft Credit Pulls*

48.     Plaintiff brings this action pursuant to 15 U.S.C. § 1681, on behalf of a nationwide class of all similarly situated individuals ("Class"), defined as:

> All persons with addresses within the United States who within the past two (2) years of the date of filing this Complaint, (i) requested a disclosure of all information in their credit file from Experian, and (ii) received a purported disclosure, (iii) which contained a list of "Soft Credit Pulls," but (iv) did not disclose all Soft Credit Pulls made within the one-year period prior to the date the disclosure was made.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for

-11-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

49.    Plaintiff also brings this action pursuant to on behalf of a subclass of all similarly situated individuals in Ohio ("Subclass"), defined as:

All persons with addresses within the State of Ohio who within the past two (2) years of the date of filing this Complaint, (i) requested a disclosure of all information in their credit file from Experian, and (ii) received a purported disclosure, (iii) which contained a list of "Soft Credit Pulls," but (iv) did not disclose all Soft Credit Pulls made within the one-year period prior to the date the disclosure was made.

Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

50.    At this time, Plaintiff does not know the size of the Class because the information is exclusively in the possession of the Defendant, but Plaintiff believes that the potential number of Class members is so numerous that joinder would be impracticable.  It has been reported that the Class could consist of over 123 million households.  The number of Class members can be determined through discovery, particularly investigation of Alteryx's internal records.

51.    All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach.  These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class and/or Subclass members include, but are not limited to:

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

a. Whether, within the two years prior to the filing of the Complaint in this matter, Experian or its agents violated 15 U.S.C. § 1681g by making a consumer disclosure which did include a complete list of all times in which a Soft Credit Pull had been made, for the one-year period prior to the time of the disclosure

b. Whether Plaintiff, Class 1, and Subclass members were damaged thereby, and the extent of damages for such violations.

52.     Plaintiff's claims are typical of the class, as Plaintiff's PII was compromised during the data breach. All claims are based on the same legal and factual issues.

53.     Plaintiff will adequately represent the interests of the class and does not have an adverse interest to the class. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigating consumer class actions.

54.     Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final declaratory and injunctive relief with respect to the proposed Subclass as a whole.

### Class 2 – Failure to Disclosure "Behavioral Data"

55.     Plaintiff brings this action pursuant to 15 U.S.C. § 1681, on behalf of a nationwide class of all similarly situated individuals ("Class"), defined as:

All persons with addresses within the United States who within the past two (2) years of the date of filing this Complaint, (i) requested a disclosure of all information in their consumer file from Experian, and (ii) received a purported disclosure, (iii) which did not contain the "behavioral data" Experian had collected and packaged as part of its ConsumerView product.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate

-13-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

56. Plaintiff also brings this action pursuant to on behalf of a subclass of all similarly situated individuals in Ohio ("Subclass"), defined as:

All persons with addresses within the the State of Ohio who within the past two (2) years of the date of filing this Complaint, (i) requested a disclosure of all information in their consumer file from Experian, and (ii) received a purported disclosure, (iii) which did not contain the "behavioral data" Experian had collected and packaged as part of its ConsumerView product.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

57. At this time, Plaintiff does not know the size of the Class because the information is exclusively in the possession of the Defendant, but Plaintiff believes that the potential number of Class members is so numerous that joinder would be impracticable. It has been reported that the Class could consist of over 123 million households. The number of Class members can be determined through discovery, particularly investigation of Alteryx's internal records.

58. All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach. These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class and/or Subclass members include, but are not limited to:

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

a. Whether, within the two years prior to the filing of the Complaint in this matter, Experian or its agents violated 15 U.S.C. § 1681g by making a consumer disclosure which did include the "behavioral data" Experian had collected and packaged as part of its ConsumerView product; and

b. Whether Plaintiff, Class 1, and Subclass members were damaged thereby, and the extent of damages for such violations.

59.     Plaintiff's claims are typical of the class, as Plaintiff's PII was compromised during the data breach.  All claims are based on the same legal and factual issues.

60.     Plaintiff will adequately represent the interests of the class and does not have an adverse interest to the class.  If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.  A class action is the superior method for the quick and efficient adjudication of this controversy.  Plaintiff's counsel has experience litigating consumer class actions.

61.     Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final declaratory and injunctive relief with respect to the proposed Subclass as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. § 1681, *et al*.
### Plaintiff and Classes 1 and 2

62.     The Plaintiff restates all allegations contained in Paragraphs 1 through 61 as if fully restated herein.

63.     This Count is brought on behalf of the nationwide Class.

64.     Based upon Experian's failures to include a list of all "soft" credit pulls on its consumer disclosures, Experian violated 15 U.S.C. § 1681g.

65.     Based upon Experian's failures to include the "behavioral data" it had collections on consumers, Experian violated 15 U.S.C. § 1681g.

66.     As a result of each and every willful violation of FCRA, Plaintiff, Class 1 and Class 2 members are entitled to: actual damages, pursuant to 15

-15-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

67.     As a result of each and every negligent non-compliance of the FCRA, Plaintiff, Class 1 and Class 2 Members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: VIOLATION OF ORC 1345.01, *et seq.*
### Plaintiff, Ohio Subclasses 1 and 2

68.     The Plaintiff restates all allegations contained in Paragraphs 1 through 61 as if fully rewritten herein.

69.     This Count is brought on behalf of the Plaintiff and Ohio Subclasses 1 and 2

70.     Plaintiff and the putative Subclasses 1 and 2 are individually "consumers" within the meaning of O.R.C. 1345.01(D).

71.     Experian is a "supplier" as that term is defined by ORC 1345.01(C).

72.     As detailed above, *supra*, Experian engaged in unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data breach and permitting access to consumer reports by data thieves, for whom Experian had no reasonable grounds to believe the data would be used for a proper purpose.  Plaintiff and Subclass 1 and 2 members relied on Experian's implied promise of data security.

73.     Experian's conduct violates ORC 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

74.     Experian engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Subclass 1 and 2 members.

75.     As a direct and proximate result of the foregoing, Plaintiff and Subclass 1 and 2 members have suffered injuries including, but not limited to

-16-

actual damages, and in being denied a direct benefit conferred on them by the Ohio legislature.

76.     As a result of the violations of Experian, Plaintiff and Subclass 1 and 2 members are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

77.     As a result of the violations of Experian, Plaintiff and Subclass 1 and 2 members are also entitled to a declaration pursuant to ORC 1345.01(D) that Experian's conduct in permitting the data breach failed to meet the PCI DSS standards.

### COUNT THREE: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. 2201
### Plaintiff, Classes 1 and 2, and Ohio Subclasses 1 and 2

78.     The Plaintiff restates all allegations contained in Paragraphs 1 through  61 as if fully restated herein.

79.     This Count is brought on behalf of the Plaintiff, Class 1 and Class 2 Members, as well as Ohio Subclass 1 and 2 members.

80.     Based on the allegations described herein, *supra*, the Plaintiff, Class 1 and Class 2 Members as well as Ohio Subclass 1 and Class 2 Members request a declaration from the Court that Experian's failure to include any acquisition of information by Alteryx, or any other entity which acquired from Experian the information on its "ConsumerView" product, on the consumer disclosures Experian sent to consumers violated 15 U.S.C. § 1681g.

81.     Based on the allegations described herein, *supra*, the Plaintiff, Class 1 and Class 2 Members as well as Ohio Subclass 1 and Class 2 Members request a declaration from the Court that Experian's failure to include the "behavioral information" for any individual consumer included on its "ConsumerView" product on the consumer disclosures it sent to consumers violated 15 U.S.C. 1681g;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

82.    Based on the allegations described herein, *supra*, the Plaintiff, Class 1 and Class 2 Members as well as Ohio Subclass 1 and Class 2 Members request an Order preliminary and permanently enjoining Experian from engaging in the violations of Ohio law outlined above; and

83.    An award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. 1681(n)(a)(3) and/or 15 U.S.C. 1681(o)(a)(1) against Experian for each incident of negligent non-compliance of the FCRA; and

84.    For all other relief this Court may deem just and proper.

### COUNT FOUR: Negligence
### Plaintiff and Ohio Subclasses 1 and 2

85.    The Plaintiff restates all allegations contained in Paragraphs 1 through 61 as if full restated herein.

86.    This Count is brought on behalf of the Plaintiff and Ohio Subclasses 1 and 2

87.    Experian negligently breached its duty of care to Plaintiff and Subclass 1 and 2 members by failing to uncover and remedy the known risks which led to the data breach, thereby leading to the dissemination of Plaintiff and Subclass 1 and 2 members' PII.

88.    Additionally, Experian failed to inform Plaintiff and Subclass 1 and 2 members of this heightened risk of harm.

89.    Plaintiff and Subclass 1 and 2 members suffered damages as a result of Experian's breach of its duty of care, and are entitled to an award of actual and punitive damages, as well as an award of reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff TERRY CARSON individually and on behalf of the Class 1 and Class 2 and Ohio Subclasses 1 and 2, respectfully requests the following relief against Defendant EXPERIAN INFORMATION SERVICES, INC.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

A. For an award of actual damages against Experian for all allegations contained in Count One, Count Two, Three and Four;

B. For an award of statutory damages pursuant to 15 U.S.C. §1681n(a)(1) against Experian for the allegations contained in Count One for each eligible Class 1 and Class 2 member and the Plaintiff;

C. For an award of punitive damages against Experian as the Court may allow for the allegations contained in Count One pursuant to 15 U.S.C. 1681n(a)(2) for the Plaintiff and each eligible Class 1 and Class 2 Member, and Count Three under Ohio law for the Plaintiff and each eligible Subclass 1 and Subclass 2 Member.

D. For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and 15 U.S.C. §1681o(a)(2) against Defendant for each incident of noncompliance of FCRA alleged in Count One, under ORC 1345.02(A) as alleged in Count Two, and under Ohio law alleged in Count Three;

E. For all appropriate equitable declaratory and injunctive relief for the allegations contained in Count Two on behalf of the Plaintiff and Ohio Subclass 1 and 2 pursuant to ORC 1345.01(D);

F. For all appropriate equitable declaratory and injunctive relief for the allegations contained in Count Three on behalf of the Plaintiff, Class 1 and Class 2 Members pursuant to 28 U.S.C. 2201; and

G. For all other relief this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a trial by jury on all appropriate issues raised in this Complaint.

DATED: December 21, 2017          **GREEN & NOBLIN, P.C.**

By: <u>/S/ Robert S. Green</u>
Robert S. Green
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

-and-

00105012.000.docx   COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

James R. Noblin
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710

William B. Federman
Carin L. Marcussen
Joshua D. Wells
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: 405.235.1560
Fax: 405.239.2112
wbf@federmanlaw.com
clm@federmanlaw.com
jdw@federmanlaw.com

Marc E. Dann 0039425
Brian D. Flick 081605
**DANNLAW**
P.O. Box. 6031040
Cleveland, Ohio 44103
*Phone: 216.373.0539*
Fax: 216.373.0536
notices@dannlaw.com
counsumernotices@dannlaw.com

Thomas A. Zimmerman, Jr.
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

David H. Krieger, Esq. (NV # 9086)
George Haines, Esq. (NV # 94111)
**HAINES & KRIEGER, LLC**
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
(702) 880-5554
(702) 385-5518
dkrieger@hainesandkrieger.com

-20-

00105012.000.docx

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Matthew I. Knepper, Esq. (NV # 12796)
Miles N. Clark, Esq. (NV # 13848)
**KNEPPER & CLARK LLC**
10040 W. Cheyenne Ave., 170-109
Las Vegas, NV 89129
(702) 825-6060
(702) 447-8048
matthew.knepper@knepperclark.com
miles.clark@knepperclark.com

Sean N. Payne (NV # 13216)
**PAYNE LAW FIRM LLC**
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
(702) 952-2733
(702) 462-7227
seanpayne@spaynelaw.com

*Pro Hac Vice Applications to be submitted*

*Attorneys for Plaintiff TERRY CARSON
and proposed classes*

00105012.000.docx   COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF